UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CATHRYN WOOD,<br>Plaintiff, | §<br>§<br>§ | Case No. 1:21-cv-3178 |
| v. | §<br>§ | JURY TRIAL DEMANDED |
| HORIZON THERAPEUTICS USA, INC.<br>Defendant. | §<br>§<br>§<br>§ | |

## COMPLAINT

Plaintiff, Cathryn Wood ("Wood" or "Plaintiff"), files this Original Complaint against Defendant Horizon Therapeutics USA, Inc. ("Horizon" or "Defendant"), alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. as amended by the ADA Amendments Act of 2008 ("ADAAA"), and the Texas Commission on Human Rights Act, Texas Labor Code § 21.001 *et seq*. ("TCHRA"), and for causes of action would show as follows:

### I.   PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff Cathryn Wood ("Plaintiff") is an individual residing in Texas.

2.  Defendant Horizon Therapeutics USA, Inc. ("Defendant") is an active corporation that has headquarters in Chicago, Illinois.

3.  At all relevant times, Defendant was an "employer" as that term is used in the ADAAA and TCHRA.

4.  Plaintiff worked remotely for Defendant in Texas.

5.  This Court has subject matter jurisdiction because Plaintiff is asserting claims arising under federal law.  Specifically, she is asserting claims arising under the ADAAA.  This Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1331.

6.  Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's Texas state law claims.

7.  Plaintiff has exhausted all administrative remedies prior to filing this suit.  She filed this lawsuit within ninety days of receiving a notice of right to sue letter from the Equal Employment Opportunity Commission.

8.  Venue is proper in in the Eastern Division of the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1391(b).

## II.    FACTUAL ALLEGATIONS

9.  Plaintiff worked for Horizon for over 2 years as a Clinical Nurse Educator ("CNE").

10. Plaintiff's work and conduct while at Horizon was exemplary.

11. Plaintiff received many bonuses, commissions, and favorable reviews.

12. Plaintiff had excellent relationships with all colleagues which included upper leadership.

13. Plaintiff was supervised by Gayle Jones.

14. Plaintiff has been diagnosed with disabilities including Attention Deficit Hyperactivity Disorder ("ADHD").

15. Plaintiff's disabilities are physical and/or mental impairments that substantially limits one or more major life activities.

16. In or around 2017, Plaintiff was prescribed Vyvanse to treat her ADHD.

17. Vyvanse can cause some people to crave nicotine.

18. Although Plaintiff had not smoked cigarettes in over ten years at the time, because of the prescribed Vyvanse, Plaintiff began smoking again.

19. Plaintiff decided to start vaping to wean herself from cigarette smoking caused by the medication she was prescribed.

20. During a conversation with Jones, Plaintiff mentioned why she was vaping due to the side effect of her ADHD medication.

21. After this conversation with Plaintiff, Jones made derogatory remarks about Plaintiff's mental health and questioned her mental health on at least one occasion after disclosing the information to Jones. For example, Jones told Plaintiff "You sound manic."

22. In or about May 2019, after spending a day working in person with Jones, she asked Plaintiff "How is your smoking going?" Plaintiff informed Jones that she was no longer smoking but, vaping instead.

23. Two days after this conversation, Plaintiff received a call from Jones saying that it is against company policy to vape while on Horizon property or during Horizon business.

24. Plaintiff then spoke to Lety Linares in HR to discuss any accommodations regarding vaping.

25. During this conversation with Linares, Plaintiff discussed how vaping was a side effect of her ADHD medication.

26. Linares forwarded the smoking/vaping policy and treatment options, and Plaintiff informed Ms. Linares that she would be seeking treatment.

27. In or around May 2019, Plaintiff's colleagues and Plaintiff were invited to send a written report on the state of the team to upper management.

28. Plaintiff and one other colleague, Shannon Ambrose, wrote a letter together and outlined their concerns about treatment of employees and work conditions at Horizon.

29. In approximately July 2019, Plaintiff reported Jones' attitude and comments about Plaintiff's disabilities to Human Resource Executive Estee Ward, Executive Director Jason Riley, and Actimmune Commercial Executive Director Noah Brown.

3

30. During her conversations with these individuals, Plaintiff described how Jones regularly questioned her mental health and made demeaning comments about her mental health. Plaintiff also requested to switch teams to get away from Jones.

31. These three executives told Plaintiff she was doing exceptionally good work, and Brown and Riley said they did not want her to leave the Actimmune project.

32. Ward, Riley, and Brown told Plaintiff that she needed to stay with her team and talk to manager Kelly Allison about Jones' comments.

33. In late August 2019, Plaintiff complained to Allison that Jones made comments about the state of her mental health, suggesting Plaintiff had disabilities and was treating her negatively because of Plaintiff's disabilities.

34. Following her conversation with Allison, Plaintiff formally complained to HR about Jones' comments about Plaintiff's mental health and treatment towards Plaintiff.

35. Approximately one week later, on September 5, 2019, Plaintiff received a telephone call from Lety Linares in the HR department for Horizon, and Linares informed Plaintiff that she had received information about Plaintiff allegedly vaping during a company meeting.

36. Linares notified Plaintiff that an investigation was being conducted regarding the vaping.

37. Plaintiff advised Linares that the information she received was false.

38. Plaintiff advised Linares that she would only vape outdoors, which was not a violation of policy. Additionally, the vape liquid Plaintiff used did not have nicotine.

39. Plaintiff called Linares to explain that she would not vape on company property and only use an empty cartridge to help with the cravings.

40. Linares abruptly ended the call and hung up the phone on Plaintiff.

4

41. Linares called Plaintiff back an hour later to inform her that her employment with Horizon had been terminated.

42. Linares said Plaintiff's termination was based on violation of company policy, but Plaintiff did not violate any policy.

43. Jones made false reports about Plaintiff vaping during a company meeting when Plaintiff was not vaping or violating company policy to purposely lodge an investigation and ultimately terminate Plaintiff's employment with Horizon as pretext for disability discrimination and retaliation.

### III.     COUNT I: DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE ADAAA AND TCHRA

44. Plaintiff adopts and incorporates herein by reference all preceding paragraphs.

45. Defendant violated the ADAAA and TCHRA by refusing to accommodate Plaintiff's disability, by failing to engage in an interactive process with Plaintiff, and by discharging Plaintiff. 42 U.S.C. § 12101 *et seq*.; TEX. LABOR CODE § 21.001 *et seq*.

46. Under 42 U.S.C. §12112 and Texas Labor Code § 21.001 *et seq*., it is unlawful for an employer to discriminate against any individual with respect to their employment because of that individual's actual disability, record of disability, or because the employer regards the individual as a person with a disability.

47. Defendant is an employer under the ADAAA and TCHRA.  Defendant is engaged in an industry affecting commerce and had more than 15 employees in each of 20 or more calendar weeks during the year in which Plaintiff was terminated, or in the preceding calendar year.

48. At all times relevant to this suit, Plaintiff was a qualified individual with a disability, was a qualified individual with a record of a disability, and was regarded by the Defendant as a person with a disability.

49. Plaintiff was qualified for and could perform the essential functions of her job at the time of her termination, with reasonable accommodations.

50. Plaintiff was meeting her employer's expectations.

51. Plaintiff was terminated as a direct result of her disability, her record of having a disability, and/or because Defendant regarded Plaintiff as a person with a disability.

52. Defendant violated both the ADAAA and TCHRA by intentionally refusing to accommodate Plaintiff's disability, retaliating against her for seeking accommodations, and discriminating against Plaintiff because of her disability by terminating Plaintiff's employment. Plaintiff's disability, record of having a disability, and/or Defendant's regarding Plaintiff as a person with a disability was a determining or motivating factor in Defendant's decision to terminate Plaintiff's employment. Plaintiff's disability, record of having a disability, and/or Defendant's regarding Plaintiff as a person with a disability moved Defendant toward its decision or was a factor that played a part in Defendant's employment decisions as to Plaintiff.

53. Plaintiff was damaged by Defendant's conduct.

54. Plaintiff seeks the relief set forth below.

## IV.    COUNT II: RETALIATION IN VIOLATION OF THE ADAAA AND TCHRA

55. Plaintiff adopts and incorporates herein by reference all preceding paragraphs.

56. Defendant violated the ADAAA and TCHRA by refusing to accommodate Plaintiff's disability, by failing to engage in an interactive process with Plaintiff, and by discharging Plaintiff. 42 U.S.C. § 12101 *et seq*. and TEX. LAB. CODE § 21.001 *et seq*.

57. Under 42 U.S.C. §12112 and TEX. LAB. CODE § 21.001 *et seq*., it is unlawful for an employer to discriminate against any individual with respect to employment because of that individual's actual

disability, record of disability, or because the employer regards the individual as a person with a disability.

58. Defendant is an employer under the ADAAA and TCHRA. Defendant is engaged in an industry affecting commerce and had more than 15 employees in each of 20 or more calendar weeks during the year in which Plaintiff was terminated, or in the preceding calendar year.

59. At all times relevant to this suit, Plaintiff was a qualified individual with a disability, was a qualified individual with a record of a disability and was regarded by the Defendant as a person with a disability.

60. Plaintiff was qualified for and could perform the essential functions of her job at the time of her termination, with reasonable accommodations.

61. Plaintiff was terminated because of reporting disability discrimination by her supervisor, her disability, her record of having a disability, and/or because Defendant regarded Plaintiff as a person with a disability.

62. Defendant violated both the ADAAA and TCHRA by intentionally refusing to accommodate Plaintiff's disability, retaliating against her for seeking accommodations, and by discriminating against Plaintiff because of her disability by terminating Plaintiff's employment. Plaintiff's disability, record of having a disability, and/or Defendant's regarding Plaintiff as a person with a disability was a determining or motivating factor in Defendant's decision to terminate Plaintiff's employment. Plaintiff's disability, record of having a disability, and/or Defendant's regarding Plaintiff as a person with a disability moved Defendant toward its decision or was a factor that played a part in Defendant's employment decisions as to Plaintiff.

63. Plaintiff was damaged by Defendant's conduct.

64. Plaintiff seeks the relief set forth below.

## V.    DAMAGES

65. As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future.  Plaintiff has also incurred other actual damages as a result of Defendant's unlawful conduct, including but not limited to past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of earning capacity, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

## VI.    COMPENSATORY DAMAGES

66. Defendant intentionally engaged in an unlawful employment practice by refusing to accommodate Plaintiff's disability, and by discriminating against Plaintiff because of her disability, her record of having a disability, and/or because Defendant regarded Plaintiff as being disabled. Plaintiff additionally brings suit for compensatory damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, injury to credit standing, job search expenses, lost earning capacity in the past and future, and other pecuniary and non-pecuniary losses.

## VII.    PUNITIVE DAMAGES

67. The conduct committed by Defendant against Plaintiff is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiff.  Therefore, Plaintiff additionally brings suit for punitive damages.

## VIII.    ATTORNEYS' FEES AND EXPERT FEES

68. A prevailing party may recover reasonable attorneys' and experts' fees. Tex. Lab. Code §21.259; 42 U.S.C. §2000e-5(k). Plaintiff seeks all reasonable and necessary attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals. Plaintiff additionally brings suit for expert fees.

## IX.     DEMAND FOR JURY TRIAL

69. Plaintiff demands a trial by jury as provided by Rule 38 of the Federal Rules of Civil Procedure.

## X.     PRAYER FOR RELIEF

70. WHEREFORE, Plaintiff respectfully requests that the Court find against Defendant as follows:

a. Declare that Defendant violated federal and state statutes identified in the Counts set forth above;

b. Award Plaintiff all actual damages, including but not limited to past and future lost wages, past and future lost benefits, lost benefits of contract;

c. Compensatory damages;

d. Punitive damages;

e. Pre-judgment and post-judgment interest as allowed by law;

f. Court costs and expenses, and litigation expenses, including but not limited to the expenses for any expert witnesses;

g. Equitable relief, including but not limited to front pay;

h. Attorneys' fees; and

i. Any such further relief as the Court deems proper and just under the circumstances.

Respectfully Submitted,
**KAPLAN LAW FIRM, PLLC**
406 Sterzing Street
Austin, Texas 78704
Telephone: (512) 553-9390
www.kaplanlawatx.com

By: */s/ Ryan O. Estes*
**Austin Kaplan**
TX State Bar No. 24072176
ND IL Bar No. 6312755
akaplan@kaplanlawatx.com
**Ryan O. Estes**
TX State Bar No. 24120586
restes@kaplanlawatx.com